In re HAWKINS MANUFACTURING, INC., Debtor.

King M. TRIMBLE, Trustee, Plaintiff,

v.

McCOY BROS., LTD., Defendant.

Bankruptcy No. 81 K 0749.

United States Bankruptcy Court, D. Colorado.

June 10, 1981.

Jon B. Clarke and Joel Laufer, Denver, Colo., for plaintiff.

Norman L. Ruggles and Janet Harris, Denver, Colo., for defendant.

MEMORANDUM AND ORDER UPON COMPLAINT TO RECOVER PROPERTY PREFERENTIALLY TRANSFERRED

GLEN E. KELLER, Jr., Bankruptcy Judge.

This is an action to recover an alleged voidable preference received by the Defendant, McCoy Brothers, Ltd. The Plaintiff is the Chapter 7 Trustee for the estate of the Debtor, Hawkins Manufacturing, Inc. The case was submitted on stipulated facts, a brief recitation of which is necessary in order to understand the issues involved.

McCoy Brothers obtained a default judgment against the Debtor in Denver District Court on March 12, 1980. The amount of the judgment was $35,425.01, plus costs. On March 21, 1980, a transcript of that judgment was recorded with the Clerk and Recorder. On September 9, the Defendant

served a writ of garnishment on Debtor's account at Farmer's National Bank of Ault, Colorado. No funds were obtained by means of the garnishment, but the Debtor did subsequently enter into a written agreement with McCoy Brothers for the satisfaction of the judgment by means of three installment payments. Pursuant to the agreement, the Debtor paid McCoy Brothers $15,000.00 on September 17, and an additional $15,000.00 on October 16, 1980. The Debtor filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code, on November 26. The case was converted to Chapter 7 on December 24, 1980.

The parties agree that the recording of the state court judgment gave Defendant a lien on any real property the Debtor owned or might subsequently acquire within the county. *See, e. g.,* § 13–52–102, C.R.S. 1973. It was further stipulated that at no relevant time has the Debtor had any equity in any real property in the county. The Trustee contends that the two $15,000.00 payments constituted voidable transfers under 11 U.S.C. § 547. The Defendant concedes the presence in this case of every element of a preferential transfer except that it questions whether the two $15,000.00 payments were "transfers" within the meaning of the Bankruptcy Code. McCoy argues that the only "transfer" that occurred was the recordation of the transcript of judgment. That recordation took place outside of the 90-day preference period. The argument continues that the two $15,000.00 payments made during the three months preceding bankruptcy should be viewed as payments in satisfaction of its previously obtained lien. The Trustee, may under 11 U.S.C. § 547(b), avoid any transfer of the debtor's property.

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition,

if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title [11 U.S.C.S. §§ 701 et seq.];

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title [11 U.S.C.S. §§ 1 et seq.].

The term "transfer" was broadly defined under the former Bankruptcy Act and, if anything, the concept has been expanded in the new Code at 11 U.S.C. § 101(40):

"transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest.

The payment of $30,000.00 by the Debtor by means of two checks clearly falls within the ambit of this definition. *See,* 2 *Collier on Bankruptcy,* ¶ 101.40 at 76 (15th ed. 1980). However, the gravaman of McCoy's defense seems to be that since the two $15,000.00 payments were received pursuant to a valid pre-existing lien, they are not preferential transfers under the statute. In support of this proposition, Defendant cites *Metcalf Brothers Co. v. Barker,* 187 U.S. 165, 23 S.Ct. 67, 47 L.Ed. 122 (1902). *Metcalf* correctly points out that not all transfers that immediately precede bankruptcy are voidable. Under certain factual circumstances, payments made pursuant to an unassailable lien are not recoverable by a trustee. *See, e. g., In re Zuni,* 6 B.R. 449 (Bkrtcy.D.N. Mex.1980).

■ However, the conceptual basis for this rule must be kept in mind. It is that to the extent a secured creditor holding valuable collateral receives payment prior to bankruptcy, the amount of the secured claim is proportionately reduced. The

"net" effect of the payments on the size of the fund available to satisfy the claims of general unsecured creditors is zero. The payments merely operate to avoid "the bite of the lien" and do not in any way deplete or diminish the estate. *Sloan v. Garrett*, 277 F.Supp. 235 (D.S.Car.1967). The limitation is that to the extent the creditor receives payments in *excess* of the value of his security, he has been preferred and the transfer is recoverable. It is made clear at 11 U.S.C. § 506 that a creditor with a lien is only secured to the extent of the value of his collateral. Payments he receives in excess of that value are preferential transfers to an unsecured creditor. In *In re Templeton*, 1 B.R. 245 (Bkrtcy.E.D.Tenn.1979), a judgment lien holder was required to disgorge $8,866.61 received from a prebankruptcy sale of the debtor's farm. Under Tennessee law, the creditor's lien only attached to the debtor's right of survivorship in the farm, which was held in tenancy by the entirety with debtor's wife. Since the right of survivorship was not itself a valuable asset, the creditor's lien thereon was likewise without value and ·could not be used to justify the creditor's retention of the $8,866.61. Similarly, in *In re McCormick*, 5 B.R. 726 (Bkrtcy.N.D.Ohio 1980), a creditor with a $4,446.26 claim secured only by a car valued at $2,950.00 was required to turn over two installment payments received during the preference period. In the absence of proof to the contrary, the court assumed that the two payments were credited towards the unsecured portion of the debt and were therefore preferential.

The Defendant has admitted that there is no equity in any real property held by the Debtor upon which its lien could attach. Hence, the claim of McCoy Brothers is unsecured under § 506 and would only be entitled to a prorata distribution along with other general unsecured creditors in the Chapter 7 proceeding. The $30,000.00 Defendant received must accordingly be turned over to the Trustee herein. Now, therefore, it is

ORDERED that judgment herein shall enter in favor of Plaintiff against Defendant in the sum of $30,000.00, together with costs to abide the event.